In the matter of the probate of the alleged will of ALICE G. VAN
HANDLYN, deceased.

[Submitted October 4th, 1913.   Decided October 11th, 1913.]

1. Evidence *held* not to show that the document sought to be probated
was intended by decedent to be testamentary.

2. If there is no attestation clause to an alleged will reciting com-
pliance with the statutory requirements, the burden of proving com-
pliance therewith is on proponent.

3. Where two of three witnesses to an alleged will did not know that
the instrument was intended as a will, there was not a compliance with
the statute as to publication.

*Mr. Michael J. Tansey,* for the proponent.

*Messrs. Lum, Tamblyn & Colyer,* for the respondents.

GRIFFIN, VICE-ORDINARY.

The proponent presented her petition praying probate of a
paper-writing as the last will and testament of Alice G. Van
Handlyn, deceased, a copy of which writing is as follows:

"I, Alice G. Van Handlyn, in consideration of one dollar, do hereby
assign to my sister Anna C. Van Handlyn all my property, both real and
personal, also ten shares of the Montclair Building & Loan Association,
and any moneys left in my name in the Bank of Montclair and in the
Montclair Trust Company.
"Signed in the presence of    "ALICE G. VAN HANDLYN.
                              "ALEXANDER E. WRENSCH.
                              "JOHN VAN HANDLYN.
                              "WILLIAM B. WILLIAMS.
"Dated this 30th day of March, 1912."

The above instrument assigns real and personal property to
be presently enjoyed by the assignee.  No idea of vesting at a
future day, nor of testamentary intent appears on its face, unless
it can be drawn from the closing clause "and any moneys left in
my name in the Bank of Montclair and in the Montclair Trust
Company."  This language, with the testimony in the cause, the

proponent argues justifies a finding that the instrument is the last will and testament of the deceased and is entitled to probate.

It was conceded by the respondent that parol evidence is admissible to explain the intent of the maker of an instrument similar to the above; and the paper might be admitted to probate if testamentary intent was satisfactorily proved, together with execution in compliance with our statute of wills.

The case raises two questions—

*First*. Did the deceased intend this instrument to be her will?

*Second*. Was this paper, if treated as a will, published in compliance with the statute?

*First*. The deceased, in her lifetime, was engaged in the dry and fancy goods business in Montclair, where she resided for a number of years prior to her death. For some time prior to the date of the above instrument she had been quite ill and so continued to the date of her death, during which time her sister Anna, mentioned in said instrument, attended to her business. On March 30th, 1912, being doubtful of her recovery, she asked her family physician to send for William B. Williams, whom she had known for a number of years, and who was an actor and justice of the peace, to prepare some papers for her, and it is here that the conflict in the evidence begins. Dr. Wrensch says that he called Mr. Williams on the telephone and told him that Alice desired him to draw her will, and afterwards called on Mr. Williams with his machine and took him to the home of Alice. Mr. Williams, who drew the paper and was a witness, denies this, saying that the message was that "Alice Van Handlyn wanted me to fix up some papers for her" without stating what the papers were. He admits, however, that he supposed she wanted to make a will. He also denies that Dr. Wrensch called for him in his automobile and took him to Miss Van Handlyn's home. In this he is supported by his son and John G. Van Handlyn. On his arrival Mr. Williams testifies that Alice told him she wanted to draw a bill of sale. "I want to turn my business over, so if anything happens to me that everything will be properly taken care of," and "I want to fix up a piece of paper so that my

sister can go on and do business, my sister Anna can go on and carry on business."

"She said she merely wanted some paper drawn to show that her sister Anna could go on and do business, pay the bills and collect bills and make checks and have charge of the bank account and the building and loan account. That is about the drift of what she wanted."

He says further:

"*Q.* When you signed that instrument did you consider that you were signing a will?
"*A.* No, I considered it as a bill of sale, and so understood at that time, so that her sister could go on and do business; that was all I knew, as far as I could understand Miss Van Handlyn's ideas."

John G. Van Handlyn, the brother of the deceased, and a witness, testified that the deceased said to him,

"Brother, you know if anything happens to me, why I want everything to be fixed so that Anna can take care of everything and she will look after you and my sister, you and Margaret."

He says that no one mentioned to him that this was a will. He says further that the deceased said to him, "Now, I want my onliest brother to sign this; I do not think everything will be all right unless I have his name on it." I said, "Well, sister, it is not necessary for me to sign it." "Well," she said, "I want you to," so I signed it to please her.

Dr. Wrensch, the remaining witness to the paper, testifies positively that Alice declared it to be her will.

Mrs. Higgins, who was present and held the ink bottle while Mr. Williams wrote, said Alice declared it to be her will. This latter witness, however, talked in such a rambling fashion, with her mind so centred on the one idea that this was a will, that it is difficult to determine whether she testified to facts or conclusions.

In *Cowley* v. *Knapp, 42 N. J. Law 297*, Mr. Justice Dixon, speaking of language similar to the expression "if anything happens to me," said it clearly indicated that it (the instrument) was intended to take effect only in the event of death, but there

the language construed was in the instrument, and the whole tenor of it indicated a testamentary disposition. Here the language is not in the instrument, but comes from the lips of witnesses who were present at the signing of the paper and who testify to directions given by the deceased to the scrivener for the purpose of drawing the instrument from which the intent not only to dispose of her property after death, but before, might reasonably be inferred.

While it is very likely that the deceased believed when she signed this paper-writing that she was making her will, and if properly advised it would have taken that form, yet, considering the character of the instrument, drawn as an assignment, with nothing on its face clearly indicating testamentary intent, the conflicting testimony as to what transpired when the paper was drawn and signed, the testimony of the scrivener that he understood he was drawing not a will but a bill of sale, it is clear that the proponent has not sustained the burden of proving that this document was intended by deceased to be her will and testament.

*Second.* Was the paper, if treated as a will, published in compliance with the statute?

The testimony shows due execution in every respect excepting publication of the instrument as her will. There is no attestation clause annexed, reciting compliance with the statutory requirements. The burden of proving the same is therefore cast on proponent. *In re Veazey, 80 N. J. Eq. 466; Bioren v. Nesler, 77 N. J. Eq. 560; Swain v. Edmunds, 53 N. J. Eq. 142; S. C. affirmed, 54 N. J. Eq. 438; Vernon v. Vernon, 69 N. J. Eq. 759.*

The evidence above referred to casts considerable doubt not only as to the declaration of the deceased, but also as to the character of the paper she was about to execute. The scrivener who drew it up and was a witness, says he did not understand that he was preparing a will, but, on the contrary, believed it to be a bill of sale. John, the brother of the deceased, said the word "will" was not mentioned. The force of his testimony, however, is somewhat weakened because of his interest. Dr. Wrensch, the remaining witness, testified to due publication as a

will. Mrs. Higgins, who was present, testifies to due publication, but for the reasons above given I do not attach much weight to her statements.

In *Mundy* v. *Mundy, 15 N. J. Eq. 290,* the ordinary, in speaking of publication, said: "The witnesses must know it is the will of the testator they are witnessing, and they must witness at his request." To the same effect is *Darnell* v. *Busby, 50 N. J. Eq. 725* (at *p. 731*).

As two of the witnesses did not know that the instrument was intended as a will, it follows that the statute as to publication was not complied with; and being thus in ignorance of the fact that the instrument was intended by the deceased to be her will, it is apparent that they did not sign as witnesses in attestation of the due execution of a will at the request of the deceased.

I will advise a decree refusing probate.